**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Juan SOSA, James J. Holmes, Richard Baker and Rolando Mesa,**
**Defendants-Appellants.**

Nos. 84–2278, 84–2279, 84–2280 and 84–2281.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1986.

Decided May 1, 1986.

Paul M. Brayman, William H. Theis, Gail Rubin, Jenner & Block, Chicago, Ill., for defendants-appellants.

Mary F. Harkenrider, Asst. U.S. Atty. (Anton Valukas, U.S. Atty.) Chicago, Ill. for plaintiff-appellee.

Before WOOD, CUDAHY, and RIPPLE, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

This case started out in July, 1983, as a one hundred and sixteen count indictment charging nineteen defendants with a conspiracy to distribute cocaine, and with other related racketeering and income tax offenses. However, the issues in this appeal relate only to the sentencing procedures involving four of the defendants.

## I.  BACKGROUND

Defendants Baker and Holmes entered pleas of guilty to certain counts, and defendants Sosa and Mesa were found guilty of certain charges in a jury trial.  All four

**1.**  Baker entered a guilty plea to two counts.  He was sentenced on Count 96, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) to a ten-year term of imprisonment to be followed by a special parole term of life under 21 U.S.C. § 841(b)(1)(A).  On Count 17, participation in a pattern of racketeering activity involving multiple cocaine transactions in violation of 18 U.S.C. § 1962(a), he was sentenced to a five-year term of probation to be served following his release from custody on the sentence imposed under Count 96.  He also executed an agreed order of forfeiture of his business pursuant to 18 U.S.C. § 1963(a).  For his violation of 26 U.S.C. § 7201, income tax evasion, Baker was sentenced to a five-year term of probation to be served concurrently with the term of probation imposed on Count 17.  Probation on this count was conditioned upon the filing of proper tax returns and the payment of any interest and penalties due.

Holmes entered a guilty plea to three counts.  He was sentenced on Count 12, participation in the cocaine distribution enterprise through a pattern of racketeering activity, in violation of Title 18, U.S.C. § 1962(c), to nine years imprisonment to be followed by a special parole term of life.  Under Count 76, possession with intent to distribute 43 kilograms of cocaine in violation of Title 21, U.S.C. § 841(a)(1), he was sentenced to 12 years imprisonment to run concurrently with the sentence on Count 12, and fined $10,000.  On Count 114, income tax evasion in violation of Title 26, U.S.C. § 7201, he was sentenced to five years probation consecutive to his sentence on Counts 12 and 76.

Sosa was convicted on Count 1, conspiracy to conduct a cocaine distribution enterprise through a pattern of racketeering activity, in violation of Title 18, U.S.C. § 1962(d), and was sentenced to six years imprisonment.

Mesa was convicted on Count 1, participating in a conspiracy to conduct a cocaine distribution enterprise through a pattern of racketeering activity in violation of Title 18, U.S.C. § 1962(d), and was sentenced to eight years imprisonment.  On Count 19, participation in the cocaine distribution enterprise through a pattern of racketeering activity in violation of Title 18, U.S.C. § 1962(c), and on Count 105, travelling in interstate commerce with intent to facilitate the cocaine distribution enterprise in violation of Title 18, U.S.C. § 1952(a)(3), he was sentenced to probation for a period of five years to follow the imprisonment imposed on Count 1.

**2.**  In pertinent part Fed.R.Crim.P. 32 reads as follows:

defendants were sentenced on July 20, 1984.[1]  After sentencing, each of the defendants contended on appeal that the district court failed to comply with Fed.R. Crim.P. 32.[2]  Baker complained that the

(a) Sentence.

(1).  Imposition of Sentence.  Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall

(A) determine that the defendant and his counsel have had the opportunity to read and discuss the presentence investigation report made available pursuant to subdivision (c)(3)(A) or summary thereof made available pursuant to subdivision (c)(3)(B);

(B) afford counsel an opportunity to speak on behalf of the defendant; and

(C) address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.

The attorney for the government shall have an equivalent opportunity to speak to the court.

   \*     \*     \*     \*     \*     \*

(c) Presentence Investigation.

(1) When Made.  The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.

The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time.

(2) Report.  The presentence report shall contain—

(A) any prior criminal record of the defendant;

(B) a statement of the circumstances of the commission of the offense and circumstances affecting the defendant's behavior;

(C) information concerning any harm, including financial, social, psychological, and physical harm, done to or loss suffered by any victim of the offense; and

(D) any other information that may aid the court in sentencing, including the restitution needs of any victim of the offense.

(3) Disclosure.

(A) At a reasonable time before imposing sentence the court shall permit the defendant and his counsel to read the report of the presentence investigation exclusive of any rec-

district judge did not determine that his counsel and he had had the opportunity to read and discuss the presentence investigation, as required by Rule 32(a)(1)(A). Baker did not challenge any contents of the presentence report. Holmes, Sosa, and Mesa each alleged that the district judge had failed either to make factual findings regarding disputed matters in the presentence report or to make the determination that the controverted items would not be taken into account in sentencing as required by Rule 32(c)(3)(D).

Before the defendants' appeal was heard the government filed a "Motion to Remand to District Court for Clarification of the Record at Sentencing" which was allowed on March 28, 1985, over the opposition of the defendants. The appeals were therefore "remanded to the district court for clarification of the record at sentencing." Upon remand the district court conducted further proceedings and entered additional findings. These additional remand proceedings have generated additional issues.

Although there is a common pattern relating to the sentencing of each defendant which we consider to be defective, we shall briefly review each sentencing. The central problem is the district court's use and treatment of the individual presentence reports in the sentencing process.

## A. BAKER

At the time of his original sentencing Baker did not challenge any information contained in his presentence report. The government spoke, among other things, about Baker's role in the enterprise and his lack of cooperation, and questioned Baker's claim in the presentence report that his family was of the utmost importance to him. Defense counsel made one passing reference to the presentence investigation, which he said suggested that Baker deliberately left facts out in what was to have been a cooperative effort by Baker with the government.

At the conclusion of the statement of counsel, the trial judge asked Baker if he had anything to say in his own behalf. Baker made a one-sentence acknowledgement that he had done wrong, but pointed out that he had been a model citizen the past two years. The trial judge, not mentioning the presentence report, then imposed the sentence.

On remand the sentencing situation developed further. The trial court found the record to be unclear as to whether Baker actually had read the report prior to sentencing although Baker had had the opportunity to do so. However, on remand Baker claimed he had not read the report prior to sentencing. The probation officer could only say he had encouraged Baker to read it. The trial judge asked both Baker and his counsel if they had now read the presentence report. Counsel responded that he had, but Baker responded that he had not until after sentencing while he was in prison. Baker was then directed by the court to read the presentence report forthwith. Counsel questioned why Baker was to read the report now as the remand was only to clarify the circumstances at the time of the original sentencing. After Bak-

ommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinions which, if disclosed, might seriously disrupt a program of rehabilitation; or sources of information obtained upon a promise of confidentiality; or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. The court shall afford the defendant and his counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

\* \* \* \* \* \*

(D) If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

er read the report in open court, the trial judge asked if there were any objections to it. Defense counsel renewed her objection that the proceeding exceeded the scope of the remand, but the objection was overruled. Defense counsel then proceeded to challenge various items in the probation report. Baker claimed that there were eight discrepancies: for example, that the amount of cocaine he was directly involved with was much less than stated in the report; that his claimed prior employment was verifiable; that the reported prior arrest was later found to be a mistake and he was released; that his family contact was much better than shown; and that his "career" was not in drugs. There were other objections to similar aspects of the presentence report.

The trial judge reviewed the record made when Baker's guilty plea had been accepted and noted that he had clearly advised Baker and his counsel that the probation report would later be available and should be reviewed. The trial judge concluded the proceedings by leaving the original sentence in place with the explanation that his procedure for purposes of rendering a sentence was to rely primarily on the proffer by the government and the written plea agreement together with the recommendation made by the probation officer. The trial judge therefore explained he considered it unnecessary to make any determination of the truth or falsity of the controverted material in the presentence report as it had not been taken into consideration at the time of sentencing.

## B. HOLMES

At the time of the original sentencing it was apparent that Holmes had read at least part of the presentence report as he challenged two parts of it. He objected to a reference to two previous convictions in New Jersey as he claimed those convictions were obtained without benefit of counsel. He also objected to information about an arrest in Pennsylvania and about his being returned to Georgia as a fugitive.

On appeal Holmes complains that after he made those objections to the presentence report at the original sentencing the trial judge made no findings as to the accuracy of the prior arrest allegations. On remand, Holmes further claimed that he had not had an opportunity to read the whole presentence report prior to sentencing, but conceded that he had read it completely since that time. Holmes proceeded to expand his list of claimed inaccuracies. The trial judge found the record to suggest that Holmes at least had been shown the presentence report and had discussed it with his counsel, but it was not clear that Holmes had the opportunity to fully read the report. Therefore Holmes was directed by the trial judge to read the full report.

The original sentence was left undisturbed by the trial judge. It was explained that the sentence when originally imposed had been based upon the written plea agreement, the government's proffer at the time the plea was accepted, and the trial judge's recollection of Holmes' testimony in a related case. The court also stated that the recommendation of the probation officer was considered. The trial judge therefore concluded that it was unnecessary to make any findings about the controverted items since none of those matters had been taken into account.

## C. SOSA

Again there was the question of whether or not Sosa had read the presentence report prior to the time of sentencing. At sentencing Sosa's counsel however had challenged certain information in the report: that Sosa had been involved in a shooting; that Sosa had attempted to branch out on his own in the cocaine distribution business; that Sosa was involved in the transportation of cocaine from Florida to Wisconsin; and, that Sosa offered a witness $25,000 to find out who might be cooperating with the grand jury and made veiled threats. On appeal Sosa complains that the trial judge failed to make any findings about the accuracy of these presentence report allegations.

On remand Sosa's counsel claimed Sosa himself had not read the probation report. Sosa was directed by the trial judge to read the report, and Sosa's objections to the presentence report were then expanded. Sosa's counsel objected to the remand proceedings as exceeding the mandate, and was overruled. The trial judge indicated that before any order in the remand proceeding was entered he would review the sentencing transcript and the presentence investigation. The subsequent written order, entered June 14, 1985, found that there was uncertainty about whether Sosa had read the probation report prior to sentencing. The trial court also held that no finding as to the validity of the objections was necessary because none of those items had been taken into account in sentencing as the sentence was based only on the sworn testimony heard during Sosa's jury trial.

### D. MESA

At the time of his original sentencing, Mesa's counsel challenged two items of information in the probation report: that Mesa had had a weapon during his drug activities and that Mesa had attempted to influence a witness not to cooperate. The trial judge responded that he would not strike those items from the report as requested by Mesa's counsel. The trial judge, however, advised counsel that he could make Mesa's representations about those disputed items directly to the Parole Commission, and added that he gave "very little attention to unverified information." On appeal Mesa complained that the trial judge did not make any findings as to the accuracy of the two controverted presentence report items. It was not claimed that Mesa did not have the opportunity to read the report.

However, during the remand proceeding counsel for Mesa claimed that Mesa had not read the report prior to sentencing. The trial court found the record uncertain on that issue although it was apparent his counsel had discussed it with Mesa. Since the trial judge found the record unclear,

Mesa was then directed to read the report, and this produced additional objections to its contents. Counsel likewise objected to taking up the contents of the probation report on the basis the court was exceeding the mandate. The objection was overruled. The trial judge left the original sentence intact, and again stated that it was unnecessary to determine the validity of the objections as none of the unverified matters had been taken into account in imposing sentence, and stated that the sentence was based on trial testimony.

### II. ANALYSIS

The government's motion to remand suggested that the district court might have had some unknown system of determining whether defendants had had the opportunity to review the presentence report prior to sentencing without specifically asking each defendant on the record. On remand there was some indication that AO Form 337, Defense Attorney's Parole Report, which the trial judge had mentioned, may have had some purpose of that sort. However, that form is one which defense counsel may complete, if desired, for the use of the United States Parole Commission after sentence is imposed. Any possible use prior to sentencing is not clear even if the form had been completed prior to sentencing. Some defense counsel had chosen not to complete the form. The government in its motion also noted that the record was silent about the trial court's determination of disputed matters prior to sentencing, and expressed doubt about whether all defendants had had an opportunity to review the presentence investigation.

The remand procedure served to clarify the sentencing situation. In view of our disposition of these appeals, however, we need not determine the additional issue as to whether or not the trial court exceeded the mandate by seeking not only to clarify what had happened, but by also attempting to remedy the original sentencings' shortcomings. In any event the sentencing shortcomings were not remedied.

The amendments to Rule 32, which became effective on August 1, 1983, about a year before these sentences were imposed, were intended to clarify the role of the sentencing judge in assuring that the defendant and defense counsel were provided with a meaningful opportunity to review the presentence report and to contest any claimed factual inaccuracies. However, no one at these sentencing proceedings, the United States Attorney, defense counsel, or the trial judge, made any reference to the requirements of Rule 32. Even without the amendments we would expect defense counsel at least to carefully go over the presentence investigation with the defendant, and if there were disputed matters to advise the court prior to the imposition of sentence. To some extent some contested items, but not all, were pointed out to the court at sentencing. On remand, after each defendant had definitely read the pertinent report, the list of contested items was expanded. The attorney for the government also failed to remind the trial judge of the sentencing requirements of Rule 32.

None of the participants in these proceedings, however, had the benefit of *United States v. Rone*, 743 F.2d 1169 (7th Cir. 1984) (Eschbach, J., dissenting), or the more recent case of *United States v. Eschweiler*, 782 F.2d 1385 (7th Cir.1986), appealed from the same trial court, which further elaborated on the application of Rule 32. Had the trial judge had these cases at hand this present situation would not have developed. *Rone* requires that the sentencing judge ask the defendant three questions in order to comply with Rule 32: (1) whether the defendant has had the opportunity to read the presentence report; (2) whether the defendant and defense counsel have discussed the report; and (3) whether the defendant wishes to challenge any facts in the report. 743 F.2d at 1174. As this is a simple, common sense routine flowing directly from the rule,

*Rone* should hereafter minimize this type of sentencing problem.

Bearing in mind that Rule 32 requires that each controverted matter in the presentence report be resolved in writing by the sentencing judge, or in the alternative, that a written determination be made that no factual determination is necessary because the matter controverted will not be taken into account in sentencing, it can be seen that Rule 32 was also violated in this regard.

At the original sentencing of Sosa, certain items in the presentence report, including a shooting incident, were controverted. However, the validity of these items was not resolved, nor was it stated even orally that the controverted items would have no bearing on the sentence. The trial judge, without mentioning the controverted items, imposed sentence. Rule 32 was violated.

The sentencing of Holmes proceeded in much the same fashion. Certain items in the probation report were controverted, and defense counsel asked the trial judge not to consider certain prior convictions claiming they had been obtained without the defendant having had the benefit of counsel. Defense counsel asked that the report be revised, but the trial judge declined to alter the report, and advised that the objections could be set out in AO Form 337 and passed along to the Bureau of Prisons. The trial judge stated that he would consider defense counsel's objections at the time of sentencing.[3] Sentence was imposed immediately thereafter as defendant declined the opportunity to say anything in his own behalf. The result was that the controverted matter was left unresolved by the trial judge, seemingly leaving that resolution up to the Bureau of Prisons. The defendant could not know whether the controverted matter had had any influence on his sentence. Rule 32 was violated.

The sentencings of Baker and Mesa, which also raised questions about the presentence reports, proceeded in much the

---

3. The government, for its own purposes during trial, had conceded that the prior conviction of

Holmes had been obtained without counsel.

same manner. However, in Mesa's sentencing the trial judge advised that he would give "very little attention to unverified information." Sentences were then imposed on these two remaining defendants. It is difficult to determine what "very little attention" may have meant. It could mean that perhaps "some" unverified information was considered. A doubt, not sanctioned by Rule 32, is left. Also, it is difficult to determine exactly what the trial judge may have had in mind when referring to "unverified information." Whether some information may be considered sufficiently verified for presentence purposes may itself be disputable. The information could be considered verified by the trial judge, but still disputed by the defendant. The dispute must be resolved, not left in doubt, or the controverted items excluded. These sentencings likewise violated Rule 32.

It now appears that this appeal could have been resolved without remand, but since we have the benefit of the remand proceeding, that proceeding will be considered. Ten months after the sentences had been imposed the trial judge attempted to resolve the controversy by having each defendant read the presentence report and explaining that none of the controverted items in the presentence reports had been considered by him for sentencing purposes. We fully accept the trial judge's explanation that the controverted matters were in fact totally excluded. However, the problem remains. Had the exclusion of all disputed matter been made clear at sentencing there would have been no Rule 32 violation, but it was not. There is also the complication that after each defendant on remand had the opportunity to fully consider the presentence investigation, the number of controverted items increased, including items not controverted at the original sentencing.

There is an additional complication arising in the written orders entered at the conclusion of the remand proceedings. It is stated as to each defendant that the court had been furnished with not only the presentence investigation, but also with the probation officer's sentencing recommendation. The written orders do not show the probation officer's recommendation as having been used as a basis for the sentences. However, during the Baker remand proceeding the trial judge stated that his "procedure is to require a proffer by the Government and a written plea agreement, and I rely for purposes of rendering a sentence on that material together with the recommendation made by the probation officer." It can be assumed that the probation officer's sentence recommendation is based on the contents of the presentence report which in each instance contained unresolved controverted matter. The presentence reports contain a concluding section entitled "Evaluation" or "Probation Officer's Assessment."[4] These sections vary in length and content. We find in them no specific recommendations as to the length of prison terms. In Mesa's report, however, it is stated that Mesa is not the innocent victim he purports to be, but is guilty as charged and deserves no special consideration. It is added that Mesa deserves "heavy censure and sanctions." As to Baker it is stated that Baker has no intent to be rehabilitated and society must be protected from his attitude and activities. Sosa's evaluation states that he should be held fully accountable. As for Holmes, among other things, there is some moralizing that this type of crime will continue to have "a tremendous effect on our society."

Rule 32(c) contemplates the use by the trial judge of the presentence investigation to assist the meaningful exercise of sentencing discretion, unless the investigation is waived by the defendant or it is found to be unnecessary by the court because of sufficient record information for sentencing purposes. In the present cases the presentence investigations were neither waived nor found unnecessary. The broad

---

**4.** We find no separate document in the record which purports to be the probation officer's sentence recommendation as suggested by the trial judge's written order.

permissible scope of the presentence report is set forth in Rule 32(c)(2). Presentence investigations in addition to personal background information often contain favorable as well as unfavorable information so that the fair consideration of the report is helpful in arriving at an appropriate sentence. The substance of the report is more important than the sentence recommendation of the probation officer, as considered as that recommendation may be. These particular recommendations or evaluations by themselves could be of little value to the sentencing judge. The sentence recommendation is ordinarily made in advance of sentencing, may be based on controverted matter, and is made without the benefit of hearing any evidence adduced at the sentencing hearing, the arguments of counsel, or whatever the defendant may have to say for himself. The sentence remains the heavy responsibility of the trial judge. To approve the procedures suggested in these circumstances might be interpreted as downgrading the usefulness of presentence investigations since it appears that they were not fully utilized for sentencing purposes except for the probation officers' recommendation.

## III. CONCLUSION

As with many changes in rules it takes awhile for the bench and bar to adjust and to determine with any certainty how the changes are to be administered in practice. So it is in this case. The prior cases of this court did not arrive in time to assist the trial judge.

These defendants are concededly guilty. The sentences imposed by the trial judge, even under the faulty process used, may, nevertheless, be appropriate as the sentences were not without some support in the record. However, without following the dictates of Rule 32 there can be no assurance of that. It is necessary here, as with other things, that there be the appear-

ance as well as the reality of fairness. *See Rone*, 743 F.2d at 1176 (Edwards, J., concurring). Nor can these significant concerns with sentencing be ameliorated by application of the "harmless error rule." *See Eschweiler*, 782 F.2d at 1390–91. These violations of Rule 32 require a remand for resentencing.

It therefore becomes necessary to vacate each of the sentences and to remand for resentencing in accordance with Rule 32. Within the discretion of the district judge on remand, the probation service may be asked to review the prior presentence reports in light of the controverted matters which have been raised, and to revise and resubmit prior to sentencing as may be appropriate.

The sentence of each of the defendants is hereby vacated, and the causes are remanded for resentencing in accordance with Rule 32. Circuit Rule 18 shall apply.[5]

---

5. The defendants also challenged the constitutionality of the mandatory special parole provision set forth in 21 U.S.C. § 841, but that challenge has already been turned back in *United States v. Bridges*, 760 F.2d 151 (7th Cir.1985), and reaffirmed in *Eschweiler*, 782 F.2d at 1386 n.4.